**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

DAVID N. PETERSEN,

    Plaintiff,

    v.                                                    Case No. 10-C-549

GERARD R. MARTI,
COLLEEN K. NOAH-MARTI,
CELEBRITIES GALLERIES, and
EURO HAWAIIAN PRODUCTIONS, INC.,

    Defendants,

TRADEWIND INSURANCE COMPANY, LTD. And
ISLAND PREMIER INSURANCE COMPANY, LTD.,

    Intervenor-Defendants.

---

# **DECISION AND ORDER**

---

On July 2, 2010, the plaintiff, David N. Petersen, filed a six-count complaint against the defendants, Gerard R. Marti, Colleen K. Noah-Marti, Celebrities Galleries, and Euro-Hawaiian Productions, Inc.[1] He alleges that he purchased various types of memorabilia of the late John Lennon from the defendants and that, despite the defendants' guarantees that they were authentic, the items were counterfeit. Specifically, the plaintiff alleges that the defendants made false and fraudulent representations about the items he purchased. He alleges claims based on intentional,

---

[1] The plaintiff's complaint originally listed two additional defendants, Insurance Factors and Emi Yoshida. However, on July 27, 2010, the court approved the plaintiff's voluntary dismissal of Insurance Factors and on November 29, 2010, the court approved the stipulated dismissal of Emi Yoshida.

negligent, and strict responsibility misrepresentation; breach of contract; and fraudulent representations in violation of Wis. Stat §100.18.[2]

The intervenor-defendants, Tradewind Insurance Company, Ltd. (Tradewind) and Island Premier Insurance Company, Ltd. (Island Premier), are insurers of Celebrities Galleries, Gerard R. Marti, and Colleen K. Noah-Marti. On November 24, 2010, Tradewind and Island Premier filed a motion to intervene, bifurcate the litigation of the insurance coverage issues from the litigation of the merits of the action, and stay the proceedings until the insurance coverage issues have been resolved. The motion to intervene was granted orally by the court on December 16, 2010, and the motion to bifurcate and stay was granted by the court's decision and order of June 24, 2011.

On August 30, 2011, the intervenors filed a motion for summary judgment, asserting that they have no duty to defend or indemnify the plaintiffs for the claims in this action. This motion has been fully briefed and will be addressed herein.

## **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Mach., 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the

---

[2] The plaintiff also alleged misrepresentations in violation of Wis. Stat. §§ 895.80 and 943.20(d)(1). However, there does not appear to be a Wis. Stat. § 895.80; Chapter 895 of the Wisconsin Statutes ends with Section 895.61. Moreover, Wis. Stat. § 943.20(d)(1) is part of the state's criminal code and thus is not properly addressed by this court in a civil action. Therefore, the court will not substantively address these claims.

suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A genuine issue of material fact is not shown by "the mere existence of some alleged factual dispute between the parties," Anderson, 477 U.S. at 247 (1986), or by "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Anderson, 477 U.S. at 252. In determining whether a genuine issue of material fact exists, the court must consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587 (1986); Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992).

## **RELEVANT UNDISPUTED FACTS[3]**

Defendant Gerard Marti resides in Hawaii and defendant Colleen Noah-Marti resides in California. Defendant Euro-Hawaiian Productions, Inc., is a Hawaii corporation with its principal place of business located at 2680 Wai Wai Place, Kihei, Hawaii 96753. Celebrites Galleries is a trade name of Euro-Hawaiian Productions, Inc.

The process of negotiating and the purchasing of the insurance policies at issue in this matter occurred in Hawaii. The principal place of business for the intervenors is located at 1022 Bethel Street, Honolulu, Hawaii 96806.

---

[3] As a general matter, unless accompanied by citation, the relevant facts are taken from the stipulated facts and the parties' proposed findings of fact which are not disputed. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

Tradewind issued the following commercial general liability (CGL) policies to Euro-Hawaiian Productions Inc., d/b/a Celebrites Gallery of Celebrity Fine Art: Policy Number TPJ9711362-00 (Policy Period 09-21-2008 to 09-21-2009) and Policy Number TPJ9711362-01 (Policy Period 09-21-2009 to 09-21-2010). Additionally, Island Premier issued the following umbrella policies to Euro Hawaiian Productions Inc., d/b/a Celebrites Gallery of Celebrity Fine Art: Policy Number PUA9711307-00 (Policy Period 09-21-2008 to 09-21-2009) and Policy Number PUA9711307-01 (Policy Period 09-21-2009 to 09-21-2010)(all Tradewind and Island Premier policies will be collectively referred to as the Policies or the CGL Policies).

The CGL Policies are "occurrence" policies. The Policies provide coverage for those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. Specifically, the Tradewind policies contain the following language relevant to the coverage issues in this action.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\* \* \*

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

    \* \* \*

    b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and,

    (2) The "bodily injury" or "property damage" occurs during the policy period.

* * *

**SECTION V - DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**17.** "Property damage" means:

  **a.** Physical injury to intangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**2.** **Exclusions**

 This insurance does not apply to:

 **a.** **Expected Or Intended Injury**

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

 **b.** **Damage To Your Product**

  "Property damage" to "your product" arising out of it or any part of it.

5

* * *

"Your Product" means:

a. Any goods or products, other than real property, manufactured, sold, handled distributed or disposed of by:

(1) You
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired;

(Luell Aff., Exh. A & B, Policy CG00010798 at 1; 10-12; 1-2).

The Island Premier umbrella policies provide:

**COMMERCIAL UMBRELLA POLICY COVERAGE FORM**

**SECTION 2. INSURING AGREEMENTS**

2.01 **Coverage**

We will pay the "Ultimate Net Loss" in excess of the "Retained Limit" the "insured" becomes legally obligated to pay as damages because of "personal injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under Item 2.02 Defense, Settlement and Supplementary Payments. The "personal injury" or "property damage" must be caused by an "occurrence" which occurs during the policy period.

* * *

6.11 "Personal injury" means any of the following acts or offenses including death and care and loss of services resulting therefrom.

A) Bodily injury, sickness or disease sustained by a person and if resulting from the foregoing shall include disability, shock, mental anguish or mental injury

* * *

6.15 "Property damage" means:

A) Physical injury to tangible property, including all resulting loss of use of that property.

B) Loss of use of tangible property that is not physically injured.

\* \* \*

The insurance provided by this policy does not apply to:

3.01 "Personal injury" or "property damage" expected or intended from the standpoint of the "insured." This exclusion does not apply to "personal injury" resulting from the use of reasonable force in protecting persons or property.

\* \* \*

3.06 "Personal injury" arising out of:

A) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

B) The failure of goods, products or services to conform with advertised quality or performance;

C) The wrong description of the price of goods, products or services; or

D) An offense committed under subsection E), F), G), H), or I) of the definition of "personal injury" by an "insured" whose business is advertising, broadcasting, publishing or telecasting.

3.12 "Property damage" to:

D) "Your product" arising out of it or any part of it;

\* \* \*

**SECTION 6. DEFINITIONS**

\* \* \*

6.13 "Your product" means:

A) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

7

>    1)  You;
>    2)  Others trading under your name; or
>    3)  A person or organization whose business or assets you have acquired;

(Luell Aff., Exh. C & D, Policy CUPCOV [09/03] at 1; 14-15; 3-4;14).

On August 19, 2010, the defendants tendered the defense of this suit to the intervenors seeking coverage under the Policies. On September 29, 2010, the intervernors agreed to provide a provisional defense, but expressly reserved their right to deny coverage and withdraw from the defense for the limited reasons stated in their letter of that date.

## **ANALYSIS**

As an initial matter, because this is a diversity action which involves connections to both Wisconsin and Hawaii, the court must determine which state's laws apply. A federal court sitting in diversity applies the choice-of-law principles of the forum state. See Cerabio LLC v. Wright Med. Tech., Inc., 410 F.3d 981, 987 (7th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020 [1941]). Wisconsin choice-of-law principles require that there must be a true conflict between the laws of the two states at issue before choosing which state's laws apply. See Herman v. United States, 382 F. Supp. 818, 820 (E.D. Wis. 1974) ("[U]nder Wisconsin law before a conflicts of law problem is presented, it must appear that the ultimate selection of law will affect the outcome."). "[I]f the laws of the competing states are the same, a court must apply Wisconsin law." Cerabio, 410 F.3d at 987 (citing Deminsky v. Arlington Plastics Mach., 2003 WI 15, 259 Wis.2d 587, 657 N.W.2d 411, 420 [Wis. 2001]). Further, Wisconsin courts make choice-of-law determinations on an issue-by-issue basis. See State Farm Mut. Auto Ins. Co. v. Gillette, 251 Wis. 2d 561, 641 N.W.2d 662 (2002). Upon review, the

result would be the same whether the court applied the laws of Wisconsin or Hawaii. Therefore, the court will apply Wisconsin law.

The construction of an insurance policy is amenable to summary judgment because it presents a question of law. Rhein Bldg. Co. v. Gehrt, 21 F.Supp. 2d 896, 899 (E.D. Wis. 1998); Heil Co. v. Hartford Acc. and Indem. Co., 937 F.Supp. 1355 (E.D. Wis 1996) (other citations omitted). Both the interpretation of words or clauses in an insurance policy and the determination of whether coverage exists under that policy are questions of law for the court. Doyle v. Engelke, 219 Wis. 2d 277, 284, 580 N.W.2d 245, 248 (Wis. 1998) (citing Just v. Land Reclamation, Ltd., 155 Wis.2d 737, 744, 456 N.W.2d 570 [Wis. 1990]; Smith v. Atlantic Mut. Ins. Co., 155 Wis.2d 808, 810, 456 N.W.2d 597 [Wis. 1990]). The Wisconsin Supreme Court has stated that "in determining an insurer's duty to defend, we apply the factual allegations present in the complaint to the terms of the disputed insurance policy." Doyle, 580 N.W.2d at 248. The court liberally construes those allegations and assumes all reasonable inferences. Id.

An insurer has a duty to defend a suit where the complaint alleges facts which, if proven at trial, would give rise to the insurer's liability under the terms of the policy. Id. Where an insurer's policy provides coverage for even one claim made in a lawsuit, that insurer is obligated to defend the entire suit. Id. at n.4. The duty to defend is broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. See Newhouse by Skow v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 834-35, 501 N.W.2d 1, 5 (Wis. 1993).

An insurer's obligation to defend the insured in a third-party suit is established by determining whether the allegations in a complaint, if proven, would give rise to the

9

possibility of recovery under the terms and conditions of the insurance policy. School Dist. of Shorewood v. Wausau Ins. Companies, 170 Wis.2d 347, 364, 488 N.W.2d 82, 87 (Wis. 1992). The nature of the claim alleged against the insured is controlling. Id. Generally, any doubts regarding the duty to defend and any ambiguities contained in the insurance contract must be resolved in favor of the insured. Id. However, "[t]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured." Nichols v. American Employers Ins. Co., 140 Wis.2d 743, 747, 412 N.W.2d 547, 549 (Wis. Ct. App. 1987) (quoting Grieb v. Citizens Casualty Co., 33 Wis.2d 552, 558, 148 N.W.2d 103, 106 [Wis. 1967]).

As noted in School Dist. of Shorewood, 488 N.W.2d at 88-89, the standards for construction of terms of insurance are well established. They are summarized succinctly as follows:

> Contracts of insurance are controlled by the same principles of law that are applicable to other contracts. A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. Whatever ambiguity exists in a contract of insurance is resolved in favor of the insured. . . . Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction. Caporali v. Washington Nat. Ins. Co., 102 Wis.2d 669, 675-76, 307 N.W.2d 218 (1981) (quoting Garriguenc v. Love, 67 Wis.2d 130, 134-35, 226 N.W.2d 414 (1975)). However, when the terms of the policy are unambiguous and plain on their face, the policy should not be rewritten to include insurance coverage not agreed to by the parties and for which it was not paid. Mercado v. Mitchell, 83 Wis.2d 17, 25, 264 N.W.2d 532 (1978).

In moving for summary judgment, the intervenors assert that there is no coverage for the claims alleged in this action for several reasons. Specifically, the intervenors contend that the alleged damages occurred before the Policies took effect. They also maintain that misrepresentation claims are not covered "occurrences" under the Policies and that the breach of contract also does constitute an "occurrence." In addition, the intervenors state that the allegations do not include "bodily injury" or "property damage" and, therefore, are not covered by the Policies. Finally, the intervenors claim that the "expected or intended injury" and "your product" exclusions in the Policies preclude coverage of the claims in this action.

In response, the defendants maintain that the Policies apply and that the intervenors have a duty to defend and indemnify the defendants in this action. Specifically, the defendants state that the alleged damages occurred during the applicable policy periods. In addition, the defendants assert that misrepresentation is an accident that falls within the definition of an "occurrence," though they do not address whether the breach of contract constitutes an "occurrence" under the Policies. The defendants also assert that the alleged damages fall within the definition of "property damage" and that no policy exclusions apply.

Wisconsin courts have held that misrepresentation claims, whether intentional, negligent, or strict liability, are not covered by CGL policies like the Policies at issue in this case. See Everson v. Lorenz, 280 Wis. 2d 1, 695 N.W.2d 298 (2005). In Everson, the insured did not disclose that part of the property he sold to the plaintiff was located on a flood plain. The plaintiff was unable to build the home he had planned on the property and sued the insured for intentional, strict responsibility, and negligent misrepresentation,

among other things. The court found that the insurance companies did not have a duty to defend or indemnify the insured because the misrepresentation claims did not qualify as "occurrences" under the policies because they were not accidents. Specifically, the court stated that in order for the insured to be liable for a misrepresentation claim, he "must have asserted a false statement, and such an assertion requires a degree of volition inconsistent with the term accident." Id. at 14.

Volition was held to be a necessary element even for claims of negligent and strict responsibility misrepresentation, because the court distinguished between "'injury that is caused by negligence'" and "'injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point.'" Id. (quoting GATX Leasing Corp. v. Nat'l Union Fire Ins. Co., 64 F.3d 1112, 1118 [7th Cir. 1995]). The court found that while the insured "may have made a mistake of fact and/or error in judgment . . . it later acted with volition," when it gave the mistaken property condition report to the plaintiff. Id. at 16. Thus, the court held that misrepresentations could not be "accidents" within the meaning of the CGL policy.

The Everson holding later was applied to claims of misrepresentation that were brought pursuant to administrative code or statutory provisions such as Wis. Stat. §100.18. See Stuart v. Weisflog's Showroom Gallery, Inc., 311 Wis. 2d 492, 513 n.15, 753 N.W.2d 448 (2008). In Stuart, the plaintiffs claimed, among other things, that the insured made misrepresentations in violation of the Home Improvement Trade Practices Act, which is codified at Wis. Admin. Code § ATCP 110 and enforced via Wis. Stat. §100.20. The plaintiffs were awarded damages for these claims and the insurance company appealed, contending that its CGL policy, which is almost identical to the CGL

Policies in this case, did not cover misrepresentations. The Supreme Court of Wisconsin found that the decision in Everson was controlling and that misrepresentation claims brought pursuant to statute were not covered by the CGL policies because the "misrepresentations do not constitute 'accidents' triggering coverage." Id. at 509. The court expressly noted that its analysis also applied to Wis. Stat. § 100.18 claims because that statute contains the same "intent to induce" language as § ATCP 110. See id., at 513 n.15.

Here, the plaintiff is asserting claims of intentional, strict responsibility, and negligent misrepresentation and fraudulent representations made in violation of Wis. Stat. §100.18. The alleged misrepresentations are very similar to the misrepresentations at issue in Everson. Specifically, like the insured in Everson, the defendants here intentionally and/or negligently misrepresented the value of the items they sold to the plaintiffs. Even if these misrepresentations were the result of a mistake on the part of the defendants, the defendants acted intentionally when they made the representations and sold the items to the plaintiff. Furthermore, the relevant language of the CGL Policies is nearly identical to the language of the CGL policies in Everson. Therefore, the court finds that the CGL Policies issued by the intervenors do not provide coverage for intentional, strict liability, or negligent misrepresentations.

Likewise, applying the reasoning of Stuart, the court finds that the asserted fraudulent representations made in violation of Wis. Stat. §100.18 are not covered by the CGL Policies here. Misrepresentations such as those alleged to have occurred in this case do not qualify as "accidents" under the policies and therefore are not covered "occurrences."

In contending that the misrepresentations in this case are covered "occurrences," the defendants attempt to distinguish the facts of this case from the facts in two Hawaii cases cited by the intervenors, State Farm Fire & Casualty Co. v. Vogelgesang, 2011 WL 2670078 (D.Haw. July 6, 2011) and Group Builders, Inc. v. Admiral Ins. Co., 123 Haw. 142, 231 P.3d 67.72 (Haw. App. 2010). The intervenors cited these cases to support their contention that the outcome would be the same under both Wisconsin and Hawaii law. The defendants attempt to distinguish the cases by emphasizing that these were construction defect cases and that Hawaii law does not deny coverage for misrepresentation claims in other circumstances.

The defendants' assertions are unpersuasive for several reasons. Notably, the defendants did not cite any Hawaii cases in which misrepresentations were deemed to be covered "occurrences" under CGL policies. Furthermore, while the facts giving rise to suit in both of the cases cited by the intervenors are construction-related, the reasoning in each case applies more broadly. In Hawaii, fraud and misrepresentation claims are not covered by CGL policies because they require "that the Defendants acted intentionally" and therefore do not constitute "accidents." Vogelgesang, 2011 WL 2670078 at *6. Tort claims such as negligent misrepresentation also are not covered "occurrences" when the claims arise from an alleged breach of contract. Id. at *7-9; Group Builders, 123 Haw. at 148-49; see also, Burlington Ins. Co. v. United Coatings Mfg. Co., Inc., 518 F.Supp.2d 1241 (D.Haw. 2007) and CIM Ins. Corp. v. Masamitsu, 74 F.Supp.2d 975, 987 (D.Haw. 1999).

Here, the alleged misrepresentations were "made in the course of [the] business relationship" between the plaintiff and defendants and thus arise from the breach of

14

contract under Hawaii law. Vogelgesang, 2011 WL 2670078 at *9. Accordingly, this court concludes that the misrepresentation claims in this case would not be covered under Hawaii law. Although the reasoning under Hawaii law may differ from that under Wisconsin law, the result in this case would be the same. Thus, as previously determined, the court rests its decision on Wisconsin law.

The only remaining claim in the complaint is a claim for breach of contract. The court notes that the defendants did not assert in their brief in opposition to the motion for summary judgment that the breach of contract claim is covered by the Policies. Rather, the defendants focused their arguments on the misrepresentation claims, calling them the "heart of this matter." (Defendant's Memorandum in Opposition to the Motion for Summary Judgment at 9). Nonetheless, the court will address whether the Policies cover the breach of contract claim.

When determining whether a CGL policy provides coverage for a breach of contract, Wisconsin law distinguishes between breaches of contract that are the result of an occurrence and breaches of contract that are not. See American Family Mutual Ins. Co. v. American Girl, Inc., 268 Wis. 2d 16, 673 N.W.2d 65 (2004). In American Family, the insured was a general contractor who hired a subcontractor to analyze the soil at a construction site. The insured followed the subcontractor's advice with respect to the soil and then completed the construction project for the plaintiff. The subcontractor's advice turned out to be faulty, the soil settled, and the building sank, ultimately becoming uninhabitable. The plaintiff sued the insured for, among other things, breach of contract.

The court found that there was no question that the "property damage . . . was anything but accidental" and thus held that it fell "within the policy's definition of 'occurrence.'" Id. at 38. The court further recognized that:

> CGL policies generally do not cover contract claims arising out of the insured's defective work or product, but this is by operation of the CGL's business risk exclusions, not because a loss actionable only in contract can never be the result of an 'occurrence' within the meaning of the CGL's initial grant of coverage.

Id. at 39. While the court in American Family declined to establish a general rule that contract claims can never qualify as covered "occurrences" under a CGL policy, it is clear that the breach of contract must be the result of an "occurrence" in order to be covered.

The breach of contract asserted in this case is factually distinguishable from the breach at issue in American Family. The breach in American Family was the result of an accident – the settling of soil. In this case, the plaintiff asserts that the defendants breached the contract because they sold items to the plaintiff that were not what they were purported to be. This breach is not the result of an accident. Therefore, there is no occurrence and the breach of contract claim is not covered by the Policies.

Even if the court were to conclude that the alleged misrepresentations and breach of contract constitute an "occurrence" under the CGL Policies, which they do not, it is clear that the Policies' "your product" exclusions would apply. The Policies exclude coverage for property damage to or arising out of the defendants' products. In Western Casualty & Surety Co. v. Budrus, 112 Wis.2d 348, 353, 332 N.W.2d 837, 840 (Ct. App. 1983), the court explained that the "your product" exclusion in CGL policies "applies to those situations where a product fails to meet a represented level of performance." That is exactly the situation in this case – any damages the plaintiff may be able to establish

16

would "arise out of" the defendant's defective product.  Therefore, in the event that the alleged misrepresentations or breach of contract could constitute an "occurrence" under the Policies, the court finds that the Policies do not provide coverage because the "your product" exclusions apply to these claims.

Given the court's determinations that there was not an "occurrence" triggering coverage and that, even if there was an "occurrence," the "your product" exclusions would apply, the court need not address the parties' arguments with respect to whether the damages occurred outside the policy periods or whether there was property damage.

In summary, the plaintiff's misrepresentation claims – intentional, strict responsibility, negligent, and fraudulent misrepresentations under Wis. Stat. § 100.18 – do not constitute "accidents" under Wisconsin law.  Moreover, the alleged breach of contract was not the result of an accident.  Therefore, there was not an "occurrence" and the Policies do not provide coverage for any of the plaintiff's claims.  However, even if there was an "occurrence," the "your product" exclusions in the Policies would apply. Thus, the court finds that the intervenors do not have a duty to defend or indemnify the defendants in this action.  Accordingly, the intervenor-defendants' motion for summary judgment will be granted.

## **CONCLUSION**

**NOW, THEREFORE, IT IS ORDERED** that the intervenors-defendants' motion for summary judgment be and hereby is **granted**. (Docket #49).

**IT IS ALSO ORDERED** that the remaining parties shall appear by telephone for a scheduling conference on February 16, 2012, at 3:00 p.m.  The court will initiate the call.

Dated at Milwaukee, Wisconsin this 1st day of February, 2012.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge